## 53255. LEWIS v. SHERWIN-WILLIAMS COMPANY.

DEEN, Presiding Judge.

Lewis, who owed a considerable debt to Sherwin-Williams Paint Company, was orally offered a contract to paint and paper 120 units for the owners of Carriage Hill Apartments at $300 per unit. He called in the manager and assistant manager of the paint company, who went over the apartments with him, helped him measure, and advised him on the cost of paint and paper. Powell, a wallpaper contractor, was present and stated his price per roll of paper. The appellee advised Lewis that it would not extend credit unless checks were made jointly to both parties, which in fact occurred. Lewis received checks during the construction, signed and forwarded them to the appellee, and the latter divided the funds, assigning a percentage to the prior balance due, a

percentage to the current account, paying Powell direct, and remitting the balance to Lewis. On completion of the contract a balance of $14,574 as shown on its ledgers remained unpaid and it brought suit for that amount. The appellant at no time contested the amounts charged for materials furnished, but appears to be resisting judgment on the contentions (a) that Sherwin-Williams had no right to retain certain sums and allocate them to the prior balance, and (b) that there was a "partnership" such that the appellee undertook to pay for the wallpaper and the labor of hanging it. The jury returned a verdict for the defendant. Plaintiff, who had previously moved for a directed verdict, moved for and was granted judgment notwithstanding the verdict, and defendant appeals.

1. The checks received during the course of the Carriage Hill contract were signed over by Lewis to Sherwin-Williams without restriction. "As to. . . application of payments. . . the general rule is that when a debtor makes a payment to a creditor holding several demands against him the debtor has the right to designate the claim to which the payment is to be applied. If the debtor does not exercise this privilege then the creditor may apply the payment as he chooses. Code § 20-1006." *Redfearn v. C & S Nat. Bank,* 122 Ga. App. 282, 286 (2) (176 SE2d 627). This contract ran between February and September, 1973, and at no time prior to the filing of this suit the following year does it appear that the defendant contested his liability or the allocation of the sums endorsed over to the plaintiff by the defendant.

2. The second defense is difficult to understand. At one place in his testimony the defendant admitted that the items sued on were furnished on open account. He appears, however, to take the position that his relation to Sherwin-Williams was that of a partnership under which the plaintiff undertook to furnish wallpaper and a paperhanger. This is of course categorically denied by both the plaintiff and the paperhanger, who testified that he had a direct contract with Lewis, and that it was on Lewis' suggestion that his labor reimbursement was taken out directly and forwarded him by the plaintiff. We must, however, look to see whether under any theory there is evidence to create an issue of fact that plaintiff

and defendant were engaged in either a partnership or joint venture which would render the plaintiff liable for the costs allocated to papering, as opposed to painting, the apartments. The contract with Carriage Hill was with Lewis alone. There is no evidence that any consideration inured to Sherwin-Williams other than the profit it might expect to make on materials sold. There is no evidence that it assumed any other responsibility. The defendant testified in his own behalf only that plaintiff's manager helped him measure the apartments and estimate cost, that he claims Powell was employed by the plaintiff because "they paid him and hired him," that he does not consider he owes the plaintiff any money because they gave him back checks and "never stated what it was for or anything"; that the owner asked him in the presence of plaintiff's store manager what it would cost to paint those apartments "and I said $300. Then he came up with the wallpaper deal. Mr. Neville spoke up and said I can get somebody to wallpaper, to put the paper in the apartments. So when we left there, me and Mr. Neville, I was riding with them in their car and was coming on back, and I said I might can cut to $300 if y'all want to wallpaper. Well, they wanted the wallpaper. They wanted to sell it. They wanted to put it in. Now this was the agreement all the way through. So then I go back to Macon and I had started painting the apartments with the agreement for me to get $300 for painting them. . . We didn't never talk to Mr. Standard. We went up there to the apartments and measured it up. And in doing the budget of what we had left in wallpaper, Mr. Neville called me and told me we could do it. So Mr. Standard's son drove up and we got out and told him we could do the stuff." Asked, "How much money were you to receive?" he replied, "I was hoping at the time I had an agreement with Mr. Standard for me to paint the things [apartment units] at $300 [each]." Asked whether he had a partnership arrangement with the plaintiff he replied: "Well, I thought it was a partnership arrangement because they certainly hired those paperhangers. They were telling me a base price of $4.00 per roll to hang it which Mr. Powell agreed to hang it for, $4.00 a roll. All right. He quit the job, and then they sent another guy over there and he went up

$1.00 a roll to hang it which I got, you know — which he paid the additional of what they went up." Asked whether he owed the plaintiff any money he replied. "In my feelings I don't" because Powell was not working for him. Asked if that was the only reason he answered, "No. The reason I said, I carried all the money there. If I owed the money then why didn't he take it."

The defendant offered no testimony to support his position either that the owner contracted jointly with him and the plaintiff, or that the plaintiff agreed to assume the expense of wallpapering the apartments involved in the defendant's contract. No consideration for such an undertaking is suggested by the evidence, and the only reasonable inference in favor of the defendant is that he thought the plaintiff felt that he could make a profit at a bid price of $300 per apartment. Otherwise, the testimony is self-contradictory and confusing. In the absence of evidence from other sources, it must be construed against the party offering it. *Wilson v. Matthews,* 122 Ga. App. 67, 69 (176 SE2d 178).

We find no evidence that the plaintiff and defendant acted as a partnership, and no evidence that the plaintiff gratuitously offered to shoulder the expenses of wallpapering the apartments. Lewis was not inexperienced or overreached; he had been in business for some thirty years. He testified that the plaintiff "wanted to sell the paper," and he knew the cost per roll of hanging it. He alone entered into the contract. He did not deny the authenticity of the figures. Accordingly, he offered no legal defense to the action and the grant of judgment notwithstanding the verdict is without error.

*Judgment affirmed. Webb and Marshall, JJ., concur.*

SUBMITTED JANUARY 6, 1977 — DECIDED JANUARY 18, 1977.

*Nicholson, Fleming & Blanchard, Jim Blanchard, Jr.,* for appellant.
*Jolles & Slaby, Richard A. Slaby,* for appellee.